Boswell v. Barnum & Bailey.

## J. M. BOSWELL *v.* BARNUM & BAILEY *et al.*
### (three cases).*

### (*Jackson.*   April Term, 1916.)

1. **THEATERS AND SHOWS.**   Right to admission.

   The right of a purchaser of a ticket to enter and remain at a
   theater, circus, race track, or private park is a mere revocable
   license.   (*Post, pp.* 38, 39.)

   Cases cited and approved:   Meisner v. Ferry Co., 154 Mich., 545;
   Collister v. Hayman, 183 N. Y., 250;   Horney v. Nixon, 213 Pa.,
   20;   W. W. V. Co. v. Black, 113 Va., 728;   Marrone v. Wash.
   Jockey Club, 227 U. S., 633.

2. **THEATERS AND SHOWS.**   Right to admission.

   No action will lie, in the absence of statute regulating admission
   to places of amusement, for refusal to admit any person.   (*Post,
   pp.* 38, 39.)

3. **THEATERS AND SHOWS.**   Right to admission.

   If the license of a ticket holder to enter a place of amusement
   be revoked, and the ticket holder ejected without necessary
   force, his only remedy is an action for breach of the contract,
   in which damages are limited to the ticket price and expenses
   incident to the purchase of the ticket and attending the place
   of amusement.   (*Post, pp.* 38, 39.)

4. **THEATERS AND SHOWS.**   Conduct of Parties.

   The patrons of places of amusement are required by law to de-
   mean themselves in an orderly and civil manner.   (*Post, pp.*
   39, 40.)

   Cases cited and approved:   State v. Watkins, 123 Tenn., 502;
   Interstate Amusement Co. v. Martin, 8 Ala. App., 481;   Weber-
   Stair Co. v. Fisher (Ky.), 119 S. W., 195.

---

*As to the nature and extent of rights of holder of ticket of ad-
mission to place of amusement, see notes in 1 L. R. A. (N. S.),
1184, 1188, and 43 L. R. A. (N. S.), 961, and upon the question of
humiliation as element of damages for exclusion from a place of,
see note in 14 L. R. A. (N. S.), 1242 and 38 L. R. A. (N. S.), 204.

5. **THEATERS AND SHOWS.** *Liability for uncivil conduct to-wards patrons.*

The proprietor of a place of amusement is required to exercise civil conduct toward those he permits to enter and remain on his premises, and is liable in tort for breach of this duty. (*Post, pp.* 40, 41.)

6. **THEATERS AND SHOWS.** *Injuries to persons attending. Acts of employe.*

Circus ushers, in acting uncivilly towards patrons in assigning seats, though acting in excess of their authority, *held* to be acting within the general scope of their authority. (*Post, p.* 41.)

Case cited and approved: Terry v. Burford, 131 Tenn., 451.

---

FROM SHELBY

---

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—H. W. LAUGHLIN, Judge.

BELL, TERRY & BELL, for plaintiffs.

THOS. M. SCRUGGS, for defendants.

MR. JUSTICE GREEN delivered the opinion of the Court.

These are three actions in tort brought against Ringling Bros., doing business as Barnum & Bailey, to recover damages for indignities suffered by the plaintiffs below from employees of the defendants below.

Plaintiffs in error operated a circus and were giving an exhibition in Memphis. J. M. Boswell purchased tickets for himself, his wife, Carrie M. Boswell, and his sister Zula M. Boswell, entitling them to reserved seats at a performance given by the circus of the plain-

Boswell v. Barnum & Bailey.

tiffs in error. The coupons were handed to an usher employed by plaintiffs in error, and the usher undertook to show the Boswells to the seats reserved by them. These particular seats were found to be occupied, and the usher requested the Boswells to take adjacent seats, to which they had no objection. A little later other persons arrived with tickets calling for those seats in which the Boswells had been located, and at the request of an usher the Boswells moved to some other seats nearby. Still later persons arrived having tickets which called for the seats where the Boswells had last been located, and the usher then undertook to move them to undesirable seats near the top of the tent, to which they objected, and Boswell asked that the party be placed then in the particular seats which their own tickets called for and which they had failed to claim originally because of the usher's request.

Testimony offered in behalf of the Boswells shows that this demand by Boswell was made in a courteous manner, but that the usher became angered, refused to accede to the request of Boswell, and addressed insulting and profane language to him. Other ushers came up, and the abuse of the Boswell party was continued. One of the ushers accused Boswell of being armed. Boswell stepped away for a moment to speak to a city policeman standing near, and while he was gone one of the ushers addressed profane language to the ladies of the party. The weight of the testimony indicates that the conduct of the circus employees was outrageous. All this occurred in the presence of the

large crowd assembled and attracted the attention of those near.

Under these circumstances the jury returned a verdict in favor of each plaintiff below for $500, and these several judgments were affirmed by the court of civil appeals. The case comes to us on petition for *certiorari* of Ringling Bros.

It is insisted that there was no evidence to support the verdict, and that the defendants below were entitled to peremptory instructions in their favor.

It is true under the great weight of authority that the right of the purchaser of a ticket to enter and remain at a theater, circus, race track, or private park is a mere revocable license. The proprietor of an amusement enterprise may deny admission to any one, and one having entered may be forced to depart on request, and, if he refuses to depart, he may be removed with such force as is necessary to overcome his resistance. No action will lie, in the absence of some statute regulating admission to places of amusement, for a refusal to admit any person. If the license to enter be revoked by the proprietor and the ticket holder ejected without unnecessary force, the only remedy of the holder of the ticket is an action for breach of the contract, and his damages are limited to the price of the ticket and any expenses incident to the purchase of the ticket and attending the place of amusement. The authorities are practically uniform upon the foregoing propositions. *Meisner* v. *Detroit, B. I. & W. Ferry Co.*, 154 Mich., 545, 118 N. W., 14, 19 L. R. A. (N. S.), 872,

129 Am. St. Rep., 493; *Collister* v. *Hayman*, 183 N. Y., 250, 76 N. E., 20, 1 L. R. A. (N. S.), 1188, 111 Am. St. Rep., 740; 5 Ann. Cas., 344; *Horney* v. *Nixon*, 213 Pa., 20, 61 Atl., 1088, 1 L. R. A. (N. S.), 1184, 110 Am. St. Rep., 520, 5 Ann. Cas., 349; *W. W. V. Co.* v. *Black,* 113 Va., 728, 75 S. E., 82, Ann. Cas., 1913E, 558; *Marrone* v. *Washington Jockey Club,* 227 U. S., 633, 33 Sup. Ct., 401, 57 L. Ed., 679, 43 L. R. A. (N. S.), 961.

Amusement places are private enterprises and the law does not confer upon the public the right to demand admission thereto. No legal duty is breached by refusing admission to any one, or excluding any one after admission. If such person has bought a ticket, there is a breach of contract, but there is no tort.

We think, however, that until the license to enter and remain at a place of amusement is revoked the law does put upon those operating such places the duty of civil treatment of their patrons present. Large crowds are assembled at these places, and, unless those in charge are held to the duty of civility, breaches of the peace will necessarily follow.

Under the common law it is a misdemeanor for a person at any public gathering, collected for a lawful purpose, to be guilty of conduct which will disturb such a gathering. *State* v. *Watkins,* 123 Tenn., 502, 130 S. W., 839, 30 L. R. A. (N. S.), 829; 1 Bishop's New Criminal Law, section 542; 2 Wharton's Criminal Law (10th Ed.), section 1556. The patrons of places of amusement are required by law to demean themselves in an orderly and civil manner. It seems to us the law

necessarily imposes a like duty upon those conducting places of amusement. Those lawfully assembled are entitled to demand that order be preserved in such gatherings, and conspicuously rude and unseemly treatment of their patrons by the owners of theaters, circuses, and such enterprises, or their employees, is an invasion of the legal right of such patrons to participate in lawful gatherings free from disturbance.

The supreme court of Alabama has held that it is the duty of the proprietor of a theater to accord civil treatment to the purchaser of a ticket while the latter is exercising the privilege for which he has contracted; that such a duty is one that may be breached by the proprietor himself or by his employees while acting within the scope of their employment, and such mistreatment may consist in the use of uncivil and offensive language addressed to the ticket holder. *Interstate Amusement Co.* v. *Martin,* 8 Ala. App., 481, 62 South., 404.

Likewise the Kentucky court of appeals has held that the proprietor of a theater is liable for rude and insulting conduct of his employees toward a patron present at the theater. *Weber-Stair Co.* v. *Fisher* (Ky.), 119 S. W., 195.

We are not aware whether the two cases just cited were actions in tort or rested on contract. The first appears to have been a suit on contract.

We are of opinion, however, that as a legal duty the proprietor of a place of amusement is required to exercise civil conduct toward those he permits to enter

and remain on his premises. For a breach of such legal duty an action in tort will lie.

The servants of the plaintiffs in error in this case, no doubt acted in excess of their authority, but they were ushers charged with the duty of assigning patrons of the circus to seats and were undoubtedly acting within the general scope of their authority.

In the late case of *Terry* v. *Burford,* 131 Tenn., 451, 175 S. W., 538, L. R. A., 1915F, 714, this court reviewed all the authorities, and held the master to be liable for the acts of the servant within the general scope of his employment while engaged in the master's business and done with the view to the furtherance of that business and the master's interests, whether such acts were committed negligently, wantonly, or even willfully.

We do not regard the verdicts found as excessive, and it follows that the judgments of the court of civil appeals in all three cases are affirmed.